NELLIE M. RICE v. PARLEY H. RICE ET AL.

*Wills—Evidence as to insanity and undue influence—Order adjudging testator an incompetent.*

1. A recital that a man is insane is superfluous, even if it be proper, in an order adjudging him incompetent to manage his estate ; and such a recital is not such evidence of testamentary incapacity as to be admissible for that purpose in proceedings to set aside his will.

2. One who is under the delusion that he is a great man and likely to be called to the cabinet is not thereby deprived of testamentary capacity if his will is itself rational and its provisions are not affected by his delusion.

3. The reception of testimony as to testamentary incapacity should be carefully guarded where it is apparent that the witness bases it upon his knowledge that the testator is subject to delusions which, in fact, do not affect such capacity.

4. In proceedings to set aside a will for undue influence exerted by testator's wife, evidence whose manifest purpose and only tendency was to prejudice the jury against the wife was *held* improper ; such as

that the testator had said she had courted him before and maltreated him after marriage ; and also that there was an ante-nuptial contract by which she was to have certain property. And in the absence of proof of undue influence it was also improper to show that some deeds prepared by testator had never been executed because, as he had said, his wife would not sign them, and that once when out late he had expressed the fear that his wife would scold him and had said that he did not mean to stay at home that night if she did.

5. The existence of an ante-nuptial contract securing certain property to the wife does not prevent the testator from making such a will as he pleases.

6. In a proceeding to set aside a will for insanity and undue influence there is no apparent relevancy in testimony that the testator, who was an old married man, had once, while away from home with his son, wanted to stop at another man's house to see the latter's daughter.

7. The question whether a testator was competent to make a will dividing his property among his family is not objectionable for failing to specify the particular will in suit if that will is as simple as any will could be.

Error to Kalamazoo. (Mills, J.) April 10.—April 23.

Appeal from probate. · Proponent brings error. Reversed.

*Hawes & Shakespeare* for appellant.

*Powers & Oxenford* for appellees.

Cooley, C. J. This case involves the validity of the will of William H. Rice, late of the county of Kalamazoo. A verdict against the will was set aside by this Court at the April term, 1883. 50 Mich. 448. The case has since been tried with the same result as before, and the proponent has again brought the case to this Court.

The objections to the will are—*first*, that the decedent was insane at the time of its execution ; and *second*, that its execution was procured by undue influence brought to bear upon him by the proponent, who was his wife. When the case was here before, it was shown that there was a finding by the probate court that the decedent was insane and incompetent to manage his property, made a little later in the day on which the will was executed ; but the insanity did not

appear to be alleged in the petition on which the judge made his order, and for that reason the question of insanity was said by this Court not to have been before the judge for his decision. It is now shown, however, that the petition was erroneously given in the former record, and that in its allegations it was as broad as the findings of the probate court. The fact is immaterial, however, as the circuit judge instructed the jury that the testamentary capacity of Rice was not involved in or determined by the proceedings in the probate court.

Such testimony as was given of insanity tended to show not general insanity, but delusions on the part of Rice respecting the currency, political affairs and his own candidacy for office. The most strange and gross of them was that his services, were needed by the general government in the management of its financial affairs and that he was likely to be made Secretary of the Treasury. Rice seems to have been a man of considerable prominence in his county, and the so-called delusions were not necessarily inconsistent with testamentary capacity, but indicated rather inordinate and ridiculous conceit than insanity. They did not at all enter into or affect the provisions of the will, which was a plain and sensible instrument, dividing the decedent's property among the members of his immediate family, and containing no provisions from which, as they read, insanity would be inferred or suspected. And the evidence tended to show that the provisions of the will were dictated by the decedent himself, in a perfectly rational manner, on the day it was drawn and executed.

Several witnesses called for the contestants, after testifying to the facts tending to prove the delusions which have been referred to, were allowed to give their opinion whether the decedent had capacity to make the will in question, or to dictate its terms. Perhaps the evidence was admissible in every instance; but it is impossible to read the record without being convinced that the opinions testified to were formed mainly, and in some cases probably exclusively, on the talk of the decedent which indicated the delusions referred to,

and that the witnesses, in giving their answers, were, in some cases at least, under a mistake as to the effect of such delusions upon testamentary capacity. Mischief from such evidence is likely to result, unless carefully guarded against by the trial judge in his instructions; but it must of necessity be left to him to give the proper cautions.

When the case was here before we had occasion to comment upon what we deemed "most remarkable evidence" "of statements made by decedent that his wife made the advances in courtship, and that on one or more occasions she inflicted outrageous personal injury upon him after marriage. No attempt," it was then said, "was made to show that the decedent was really under delusion in respect to these matters, and the natural tendency of the evidence was to prejudice the jury against the proponent, by leading them to believe or to suspect that she was an unworthy person, and undeserving of her husband's bounty. But the existence of a delusion that his wife was unworthy of esteem, or was abusing him, would be a singular reason for setting aside a gift which he had deliberately made in her favor."

This evidence is put into the case again, on what ground or under what excuse we do not understand, and are without any explanation from the contestants. It was very likely to have affected the opinions of the jury improperly on either branch of the case, and, if there were no other errors, would necessitate a reversal.

The contestants were permitted to give evidence tending to show that there was an ante-nuptial contract between decedent and the proponent whereby she acquired or was to have certain property. The judge correctly charged the jury that the existence of such a contract would not prevent the decedent making a will as he pleased; but the charge itself showed the error in receiving the evidence, which could have had no other tendency than to prejudice the jury against the will which was made, so far as it was beneficial to the proponent.

No reason appears in the record to justify the reception of evidence that on a certain occasion, when decedent was away

from home with one of his sons, he wanted to stop at a Mr. Sweet's to see Sweet's daughter. As given in the record the evidence seems to have been wholly irrelevant.

Mr. Sherwood, who was acquainted with the decedent, and had had interviews with him shortly before the will was executed, was asked his opinion upon the competency of the decedent to make or dictate a will dividing his property among the members of his family. An objection to the question was sustained because it did not direct the attention to the will in question. As there is nothing complicated in the will, and it distributes the property among the members of the family in a very simple way, the point of the objection is not apparent. If decedent had capacity for any will he had for this.

Dr. Foster Pratt, who knew the decedent, and who had seen and talked with him late in the summer or early in the fall of 1879, was asked his opinion of his mental capacity that fall, but was not allowed to answer. The reason for this ruling is not explained. Probably no other witness called in the case was so competent to express an opinion upon which the jury might confidently rely.

Mr. Frank Dudgeon, who had had a wheat transaction with the decedent in the fall of 1879, which he detailed at large to the jury, was asked whether anything occurred at the time that indicated a want of understanding in decedent as to the business in which he was engaged. Also whether he saw anything that indicated mental derangement. Also what his opinion was as to the decedent's mental condition. These questions were all objected to and the objections sustained. They should all have been answered. The witness had shown himself quite as well entitled to speak to mental capacity as several of the witnesses for the contestants whose evidence was received.

Evidence was given by contestants that decedent had some deeds prepared at one time which were never executed, because, as he said, his wife would not sign them. Also that, when going home late one night, he expressed a fear that his wife would scold him, and did not propose to stay

at home that night if she did. And other little things were proved, by themselves insignificant, which might possibly have been competent had there been any evidence in the case fairly tending to show undue influence, but not otherwise. The record is bare of any such evidence.

The specific question was submitted to the jury whether the decedent was insane the day the will was made and the guardian appointed. This question was objectionable in form, as keeping before the jury to the very end of their deliberations the fact of probate proceedings, which were well calculated to prepossess their minds against the will, though the judge in his instructions had in effect put them out of the case. But the question, under the circumstances, was likely also to be misleading, because it tended to lead the jury to infer that the existence of the delusions which the contestants had put in evidence as proof of insanity would be decisive of the case. This, as has already been shown, would be an error. The real question in the case was whether the decedent, at the time the instrument in controversy was executed, had control of his faculties so as to be capable of making a sensible disposition of his property; and not whether he was mentally as strong as ever, and as free from error and delusion in his mental operations, or even whether he was capable of managing his business affairs with skill or prudence. The judge of probate would seem, by his order, to have found Rice insane, as well as incompetent to manage his property: but the same judge afterwards, in a hearing upon the will, held that on the day when he appointed a guardian for him Rice had testamentary capacity. This last finding is significant as tending to show the understanding of the judge of his first adjudication, and of the issue he then had before him. The question on the first hearing was only one of the competency of Rice to manage his property; and though insanity as well as incompetency was alleged, the insanity would be important in the case only as a fact tending to support the main allegation of incompetency. It is neither usual nor proper, as a general thing, to recite in an adjudication the facts which lead the judge to

his conclusion; but if they are recited it is still the main fact that is found, and the main fact alone that was necessarily involved in the issue. In this case, when the incompetency which was charged was found to exist, the further finding of a fact upon which the incompetency may or may not, in the judge's opinion, have depended, was, to say the least, superfluous, and for that reason, or because it was set out in the petition, may have been recited in the order appointing a guardian with little or no consideration of the fact alleged. Or as the term "insane" has no very definite and well-defined meaning in common use, and has been very often employed in this case in a sense perfectly consistent with testamentary capacity, the judge, if he made use of it deliberately, may have had, and very likely did have, a like sense in mind.

As the case must go back for a new trial it is proper to add that the judge, in his instructions, sometimes spoke of the case as if there were evidence of general insanity with lucid intervals. It does not appear that there was any such evidence.

A new trial will be ordered.

CAMPBELL and CHAMPLIN, JJ., concurred. SHERWOOD, J. did not sit.