RENDERED: NOVEMBER 3, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0473-DG

MARTIN L. SMITH                                                             APPELLANT


ON DISCRETIONARY REVIEW FROM FAYETTE CIRCUIT COURT
v.                              HONORABLE KIMBERLY N. BUNNELL
ACTION NO. 21-XX-00029


JOHN NORMAN, SUCCESSOR
TRUSTEE OF THE MARTIN L.
SMITH REVOCABLE TRUST
AGREEMENT; E&E
MANUFACTURING COMPANY,
INC.; AND WALLACE SMITH                                                     APPELLEES


OPINION
REVERSING AND REMANDING
WITH DIRECTIONS

** ** ** ** **

BEFORE: CETRULO, JONES, AND TAYLOR, JUDGES.

CETRULO, JUDGE: This Court granted discretionary review of a ruling of the

Fayette Circuit Court ("circuit court"), which upheld rulings of the Fayette District

Court, Probate Division ("district court"), in the matter of Martin L. Smith

Revocable Trust Agreement.

## I. FACTUAL AND PROCEDURAL HISTORY

In 2017, Appellant Martin L. Smith ("Martin") created the Martin L. Smith Revocable Trust (the "Trust") and, as the Settlor, he made himself the Trustee and Sole Beneficiary. The Trust contained his 48.2% interest in Appellee E&E Manufacturing, Inc. ("E&E"), a family business he jointly owned with his brother, Appellee Wallace Smith ("Wallace"). Additionally, the Trust contained his 50% interest in 200 Industrial Drive, Inc., a limited liability company. According to the Trust, Martin established it to "provide management of assets during Settlor's lifetime and to act as the means of distributing Settlor's assets after Settlor has died." Martin created the Trust in Michigan, and the Trust stated that its validity, construction, and administration are governed by Michigan law.

Pertinent to the **Settlor**, the Trust stated that "[d]uring Settlor's lifetime, the [Trust] may be revoked partially or completely or amended in any respect. This power <u>may be exercised by Settlor at any time and without the consent of Trustee or anyone else</u>, but the revocation or amendment must be in writing." (Emphasis added.) The Trust acknowledged the possibility of the Settlor's incapacitation but did not expressly prohibit the Settlor from making written amendments if he were to become incapacitated. However, the Trust did provide that upon Settlor's incapacity, Settlor's spouse "has the right to remove

and replace a professional trustee with another professional trustee, with or without cause."

Pertinent to the **Trustee**, the Trust stated that "[a] fiduciary or a beneficiary shall be deemed incapacitated if a court having jurisdiction determines that due to physical or mental conditions, the person is unable to exercise about or attend to property or financial matters." The Trust detailed that "[t]he determination that an individual trustee is incapacitated, as defined by this [Trust], constitutes the resignation of that person as a trustee." If it became necessary to appoint a successor trustee and there was no designated successor trustee willing and able to serve as Trustee, "Settlor's spouse may . . . appoint a successor professional trustee within 30 days of the vacancy. If the appointment is not made within 30 days of the vacancy, a court having jurisdiction may appoint a successor professional trustee."

Three years later, in the summer of 2020, Martin suffered a stroke and filed a petition with a Michigan Probate Court to assign his wife, Elise Smith ("Elise") as his conservator and guardian. The Michigan Probate Court presumably held a hearing[1] and concluded that Martin was "totally without the capacity to care for himself" due to "physical illness or disability." As such, the

---

[1] The contents of the hearing are not part of the record.

Michigan Probate Court granted Martin's petition for appointment, naming Elise as Martin's guardian and conservator in July 2020.[2]

In January 2021, counsel for the Trust filed a motion to appoint a successor trustee in the district court. The motion alleged that Martin was now a resident of Lexington, explained Martin's recent stroke and Elise's appointment as guardian and conservator in Michigan, and asserted that, according to the Trust, Martin's incapacity meant he could no longer serve as Trustee of the Trust. The Trust had provided that in such a situation, Comerica Bank would serve as the successor trustee; however, the bank had declined to do so. Therefore, since the successor was "unable or unwilling to serve," Elise could have appointed a successor professional trustee within 30 days. The motion stated that Elise had failed to do so; therefore, "the [district court] now has the authority to appoint a successor professional trustee [according to the Trust]." The district court sustained the motion, appointing John E. Norman as the successor trustee of the Trust ("Successor Trustee").

---

[2] Meanwhile, Martin had pending litigation against his brother, Wallace, in Michigan Federal Court and had pled therein that diversity existed as he now resided in Kentucky. The Michigan Federal Court did not agree (based in part upon the probate proceedings and medical treatment in Michigan) and dismissed that action. The federal court had dismissed Martin's claims for lack of diversity jurisdiction, and Martin had filed a motion for reconsideration. *Smith v. Smith*, Case No. 19-10330, 2021 WL 5629979, *1 (E.D. Mich. Dec. 1, 2021) (ultimately denying the motion to reconsider).

Then, only two months later, on or about May 29, 2021, Successor Trustee reached an agreement to sell the Trust assets to E&E ("Settlement Agreement").[3] The Settlement Agreement, although drafted, specified that the sale was subject to more definitive written agreements and the approval of the district court. This quickly negotiated sale by the "Successor Trustee" was for a sum of approximately $18 million.[4] At that point, the record indicated that Martin and/or Elise were not pleased with the Successor Trustee's actions; they believed the Trust value was far greater than the sale price.

On July 6, 2021, Martin executed The First Amendment to the Martin L. Smith Revocable Trust (the "Amendment"), which allowed Elise to remove and replace the court appointed successor trustee with either a professional trustee or a non-professional trustee. Further, Martin added a provision: "My wife, Elise G. Smith, shall serve as Trustee of my trust." Martin then provided a copy of the Amendment to the Successor Trustee.

Two days later, on July 8, 2021, Successor Trustee Norman filed a motion in the district court to set aside this amendment and moved the court to

---

[3] In the Federal litigation, Martin had claimed shareholder oppression and breach of fiduciary duty against Wallace, the majority owner of E&E. *Smith v Smith*, 526 F. Supp. 3d 263, 265 (E.D. Mich. 2021). This Settlement Agreement between Successor Trustee and E&E included an agreement that Martin's Trust would settle all of its claims in the federal action.

[4] The principal amount of the sale negotiated by Successor Trustee was actually $11 million with interest payments, totaling $18 million after a number of years.

approve the asset sale he had negotiated. The Successor Trustee served that motion on Martin, Elise in her guardian capacity, and Martin's attorney. The motion referenced the matter as stemming from that which Martin (through counsel) had initially filed with the district court in the Trust's motion to appoint the Successor Trustee.[5] The motion detailed Martin's incapacity and claimed he lacked the authority to execute the Amendment.

A couple of days later, Martin's new attorney entered a notice of appearance in the district court and filed a response to Successor Trustee's motion to set aside the Amendment and a motion to disapprove the asset sale. The response asserted that the trust value was in excess of $34 million and that Martin and Elise opposed the proposed sale and Settlement Agreement reached by the Successor Trustee. Martin acknowledged that a Michigan court had adjudicated him as incapacitated and that the guardianship and conservatorship orders were being transferred to the district court. However, the motion stated that Martin had the capacity to make the Amendment *at the time he made the Amendment*, and that his incapacity had been temporary. It further noted that Martin had executed the Amendment as a "temporary stopgap to prevent the settlement of [the underlying federal action]." Martin claimed that he planned to terminate the guardianship and conservatorship once the underlying federal action was resolved. In the motion,

---

[5] As such, Successor Trustee's motion was filed under the same case number.

Martin's counsel emphasized that he found Martin "to be incredibly sharp and of sound mind, with the ability to recall names, dates, and numbers with ease" and that Martin had "fully recovered from the effects of his stroke."

At a status update when Martin's attorney and Successor Trustee were present, Successor Trustee asked the district court to set aside the Amendment; however, the district court declined to do so, noting that an evidentiary hearing would be necessary. The parties all agreed with this and estimated the hearing would likely take three to four hours, as each would have multiple witnesses, some of which would come from out of state. The district court scheduled the hearing for the end of August 2021.

A couple of days before the hearing, brother Wallace and E&E filed a motion to intervene in the action, claiming each had an interest in the asset sale, which would likely fall through if the district court allowed the Amendment. At the hearing, Martin's attorney objected to Wallace and E&E's participation on the first issue to be addressed: whether Martin had the capacity to amend his Trust. Nevertheless, the district court permitted the intervention. Martin then filed a witness list for the August 2021 hearing, which included himself, Elise, and an expert who would testify regarding the proposed asset sale and trust values. In mid-August 2021, Wallace and E&E filed a response to Successor Trustee's motion to set aside and approve the asset sale, agreeing with Successor Trustee that

-7-

Martin did not have the capacity to amend the Trust and asserting that the asset sale was in the best interest of his brother's Trust.

At the August 2021 hearing, Martin and Elise were present with counsel, along with their expert as to the Trust value. Additionally, Successor Trustee was present with his counsel and counsel for Wallace and E&E. The arguments focused on Martin's capacity to amend his Trust, and the district court concluded that "once someone is determined wholly disabled, they have to come to court to overturn that . . . and they didn't do that." Martin argued, however, that testamentary capacity for trusts is treated the same as that for wills, and with wills, there is no requirement that those with testamentary incapacity cannot sign wills. The district court judge acknowledged that argument, but stated, "I think this is different" and noted that Martin "didn't go about it the right way, so I just have to read what I've seen and heard and set aside the trust amendment and approve the sale." Martin asked if the judge would allow testimony, and the judge said he did not believe it was necessary.

The next month, in September 2021, and without an evidentiary hearing, the district court entered an order sustaining Successor Trustee's motion to set aside Martin's Amendment to the Trust and further approving the asset sale. The district court found that Martin's attempted amendment had no legal effect; that Successor Trustee remained trustee for the Trust; and, as such, had approved

the sale of assets of the Trust for $18 million. Despite the fact that all had agreed an evidentiary hearing was necessary, and witnesses being available to testify regarding incapacity and the trust value being in excess of $34 million, no hearing occurred. At no point during the district court proceedings did the parties or judge question Martin's status as a party or object to his participation in the action.

Martin then timely appealed the September 2021 district court order to the circuit court. Three months later, Successor Trustee filed a counterstatement of appeal, in which he – for the first time – claimed Martin was not a party to the district court action and therefore lacked the authority to appeal to the circuit court. In February 2022, the circuit court conducted a bench conference finding that Martin did not have the authority to amend the Trust because his deemed resignation as Trustee "prevented him from having the authority to exercise that kind of control." However, the majority of the discussion focused on whether Martin was a party to the district court action and whether he could properly appeal the order.

Successor Trustee, Wallace, and E&E argued that Martin was not a party because he failed to file a motion to intervene in the district court. However, Martin noted that the Successor Trustee filed the motion to set aside *his* Amendment to *his* Trust, served *him* with the motion, and the district court and other parties proceeded to treat him as a party to the action. Additionally, Martin

emphasized that no party had raised any question of his party status in the district court.

Nonetheless, the circuit court stated that it did not believe such issue could be waived; therefore, it found Martin was not a party to the action below and was not properly before the circuit court. As such, the circuit court ended the discussion and did not review the district court's decision regarding the asset sale. The circuit court then entered an order in March 2022, addressing only Successor Trustee's motion to set aside Martin's amendment to the Trust.

In keeping with the Trust itself, the circuit court found that the district court properly appointed John Norman as successor trustee of the Trust ("January 2021 Order"), to which Martin did not appeal or object in court.[6] The circuit court found that once the district court entered the January 2021 Order, Martin "was not a party to the [district court] action" captioned *In Re Martin L. Smith Revocable Trust*. Further, the circuit court found that Martin "did not request to be made a party to the [district court] action thereafter." Finally, the circuit court found that the district court had given the Michigan Probate Court's incapacity orders full faith and credit and entered orders of conservatorship and guardianship in August 2021.

---

[6] The record does not reflect that Martin or Elise, his guardian, were served with the petition.

-10-

Based on those findings, the circuit court affirmed the district court's order sustaining Successor Trustee's motion to set aside the Amendment. The circuit court concluded that based on Martin's adjudicated incapacity, he lacked authority under the law and the terms of the Trust to amend it. Further, the circuit court stated that Martin's deemed resignation as trustee prevented him from exercising control over the Trust in the manner of appointing a successor trustee. Having concluded that Martin was not a party in the district court action, it determined that he did not have standing to bring the appeal in the circuit court. Martin then sought discretionary review from this Court.

## II.  STANDARD OF REVIEW

A circuit court's determination on standing is a legal question and therefore subject to *de novo* review on appeal. *Interactive Gaming Council v. Commonwealth ex rel. Brown*, 425 S.W.3d 107, 111 (Ky. App. 2014) (citing *Tax Ease Lien Invs. 1, LLC v. Commonwealth Bank and Trust*, 384 S.W.3d 141, 143 (Ky. 2012)). Under *de novo* review, this Court owes no deference to the circuit court's "application of the law to the established facts." *Id.* (citing *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. App. 1998)).

As for the capacity issue and whether the district court should have permitted testimony at the evidentiary hearing, we review for abuse of discretion. *See Goodyear Tire and Rubber Co. v Thompson*, 11 S.W.3d 575, 577 (Ky. 2000).

"The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* at 581 (citation omitted).

## III.   GOVERNING LAW

Whether Martin was a proper party in the district court is a procedural issue regarding the jurisdiction of the district court. As such, Kentucky law governs Martin's ability to make arguments and participate in the action in that court. Kentucky Rule of Civil Procedure ("CR") 1(2) ("These Rules govern procedure and practice in all actions of a civil nature in the [Kentucky] Court of Justice . . . ."). However, Michigan law governs the validity, construction, and administration of the Trust, per the terms of the Trust. As such, questions regarding the validity of amendments to the Trust are governed by Michigan law. *See also* Kentucky Revised Statute ("KRS") 386B.1-050(1) ("The meaning and effect of the terms of a trust governed by this chapter are determined by:  (1) The law of the jurisdiction designated in the terms [unless contrary to public policy].").

## IV.   ANALYSIS

Martin argues that the circuit court erred when it found he was not a party in the district court case and therefore did not have standing to appeal to the circuit court. Further, Martin argues the circuit court erred when it affirmed the

district court's finding that Martin did not have the capacity to make the Amendment without considering evidence other than the incapacity adjudication.[7]

## A. Real Party in Interest

The circuit court found that Martin had lost party status when the district court appointed a Successor Trustee to the Trust. Then, because Martin did not file a motion to intervene when Successor Trustee moved to set aside Martin's Amendment to the Trust, the circuit court concluded that Martin never again gained party status. As such, the circuit court found Martin could not properly appeal the district court's order, and thereby affirmed it.

Martin argues that the appellees waived that argument at the district court because they did not raise it until Martin appealed to the circuit court. Specifically, Martin claims that he was a party because the Successor Trustee filed the motion to set aside the Amendment and approve the asset sale under the same case that Martin's previous counsel had initiated to appoint the Successor Trustee. Further, Martin notes that the Successor Trustee served Martin and his attorney with the motion to set aside the Amendment and approve the sale. Finally,

---

[7] Additionally, Martin argues the district court erred when it refused to consider evidence that the Settlement Agreement was inadequate and not in his Trust's best interests. While that may be true, that issue is not before this Court; the circuit court expressly avoided reviewing that portion of the proceedings and made findings solely concerning whether Martin was a party and capable of amending the trust. As such, the approval of the asset sale was not preserved for appellate review. *Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky. 1976), *overruled on other grounds by Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky. 2010) (finding the circuit court's failure to address an issue meant that issue was "not properly preserved for appellate review").

-13-

Martin's attorney had filed a Notice of Appearance on behalf of Martin and a reply to the Successor Trustee's motion, as well as his own motion for the district court to disapprove the asset sale. The district court accepted those filings, and no party objected for want of party status.

Additionally, Martin explains, he and Elise appeared with their attorney at the August 2021 Hearing, where the attorney argued the substantive merits in opposition of the Successor Trustee's motion. In fact, all Appellees appeared (through counsel) at that hearing and made their respective arguments against Martin, with Successor Trustee recognizing that he now had a conflict based on the validity of the Amendment. Despite the apparent acceptance that Martin was the person against whom they needed to make their arguments, the Appellees now argue that Martin was never a party to the district court action because he never filed a motion to intervene.

Therefore, the first issue is whether the Appellees properly raised the issue of Martin's party status. If not, Kentucky precedent provides that the issue was waived. *Owensboro Nat'l Bank v. Dep't of Revenue*, 394 S.W.2d 461, 465 (Ky. 1965). *Cf. Thompson-Starrett Co. v. Mason's Adm'rs*, 201 S.W.2d 876, 883 (Ky. App. 1946). In *Owensboro*, the appellees presented a procedural challenge to appellant's right to maintain the action, "based on the premise that appellant [was] not the real party in interest within the purview of CR 17.01." *Id.* However, the

-14-

appellees "failed to raise the defense" until months after it had already filed its responsive pleading. *Id.* (citing CR 12.08).[8] Thus, the court found the contention lacked merit. *Id.*

Likewise, in *French v. Boyd*, 183 S.W.2d 522, 529 (Ky. App. 1944), Kentucky's highest court found a party, on appeal, "questioning for the first time the right of the [opposing party] to bring the action . . . [was] too late to raise that question[.]" There, the plaintiffs instituted an action to recover money from the defendant. *Id.* at 528. The judgment awarded money to the plaintiffs, and the defendant appealed, raising for the first time the issue of the plaintiff's party status. *Id.* The court found that if no one objected to the party's participation in the proceedings below, that objection was waived. *Id.* at 529.

Similarly, here, the parties and court referenced Martin as a party in numerous filings, certificates of service, and court orders, including the September 2021 order on appeal; allowed Martin to participate in the hearings and submit witness lists, including for the August 2021 hearing on the motion to set aside the Amendment; and allowed Martin's counsel to object and respond to motions. Further, Successor Trustee served Martin with the motion, argued against him

---

[8] CR 12.08(1) states that "[a] defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived . . . (b) if it is neither made by motion under Rule 12 nor included in a responsive pleading or an amendment thereof permitted by Rule 15.01 to be made as a matter of course."

-15-

throughout the course of four hearings, never objected to Martin's participation in the proceedings, and never raised a question of his party status nor suggested that he was improperly before the district court.

Wallace and E&E, too, failed to raise any issue with Martin's participation in the district court. Even with the opportunity to file their response joining in the Successor Trustee's motion *following* a hearing in which Martin's counsel objected to their motion to intervene, Wallace and E&E did not raise an issue with standing. At any point, either of those parties could have objected to Martin's participation and questioned his party status. However, their failure to do so from the time the Successor Trustee filed its motion to set aside the Amendment on July 8, 2021, until Successor Trustee filed its counterstatement of the appeal on December 3, 2021 – despite having numerous opportunities to do so, during hearings and through written responses – indicates that the appellees waived that argument.

Additionally, like the party in *Owensboro*, it is clear that Martin had a distinct interest in the proceedings here. "It is a long-standing rule of Kentucky law that a cause of action may only be advanced by the real party in interest." *Combs v. Richards*, 63 S.W.3d 193, 194 (Ky. App. 2001) (citing CR 17.01). "The real party in interest is the party who will be entitled to the benefits of the action

-16-

upon a successful termination thereof; one who is actually and substantially interested in the subject matter." *Id.* (citations omitted).

The district court's decision to set aside the Amendment, which would have appointed Elise as trustee, directly affected the administration of Martin's Trust, for which he is the settlor and sole beneficiary. Further, if the district court had approved the Amendment, the asset sale would not have gone through, which again, would have materially changed the contents of the Trust and Martin's rights under the Trust. It is hard to image someone involved who would have more interest in the action than Martin.

The Kentucky Supreme Court provided beneficial context regarding the interests a settlor-sole beneficiary, like Martin, has in their trust: "In essence, the corpus of the trust belongs to the settlor who is also the sole beneficiary." *Phillips v. Lowe*, 639 S.W.2d 782, 784 (Ky. 1982).[9] Even where a settlor-sole beneficiary attempted to fully terminate an irrevocable trust – and negate their original intent in creating the trust – the Kentucky Supreme Court found that it was

> of no importance when the settlor has changed his mind and formed new plans with regard to the enjoyment of his property. His present intent should be carried out. The situation involves merely a change in an absolute property owner's desires as to methods of enjoying the assets which constitute the trust capitol.

---

[9] Although, unlike here, *Phillips* involves an irrevocable trust, the case provides valuable insight on the rights and relationship of a settlor-sole beneficiary to his or her trust.

*Id.* at 783-84 (citation omitted) (emphasis omitted).

Martin, as settlor and sole beneficiary of the Trust, had an interest in the administration of the Trust and the outcome of the district court's decision regarding the same. The appellees did not timely object to Martin's status as a real party in interest to the district court proceedings. Therefore, the issue was waived, and Martin had the authority to appeal the action to the circuit court.

## B. Martin's Capacity to Amend the Trust

Next, Martin argues that under Michigan law, prior adjudicated incapacity is not dispositive to determine capacity to amend a trust instrument. Further, he argues capacity to amend a trust is the same as that required to execute a will, which is a lower threshold than the Successor Trustee suggests. Therefore, Martin contends, the circuit court's affirmance of the district court's refusal to hear any evidence as to Martin's capacity *on the day he executed the Amendment* was contrary to law and constituted an abuse of discretion.

Alternatively, Successor Trustee argues that Martin's adjudicated incapacity meant "Martin lacked the capacity to amend the Trust based on the standard set forth in the Trust." Therefore, he claims, the Amendment was

prohibited by law. The circuit court agreed and found the Amendment to be invalid based solely on Martin's incapacity adjudication.[10]

The question before this Court is whether the adjudicated incapacity alone is sufficient to prove incapacity to amend a trust. In Michigan, "the Estates and Protected Individuals Code ("EPIC"), [Michigan Compiled Law ("MCL")] 700.1101 *et seq.*, governs the application of a trust in Michigan[,]" including amendment issues. *In re Stillwell Trust*, 829 N.W.2d 353, 294 (Mich. App. 2012) (citation omitted).

EPIC provides that "[u]nless the terms of a trust expressly provide that the trust is irrevocable, the settlor may revoke or amend the trust." MCL 700.7602(1).[11] Therefore, if the settlor has the requisite capacity, it "may revoke or amend a revocable trust . . . [b]y substantially complying with the method provided in the terms of the trust." MCL 700.7602(3)(a).[12] "The capacity required to create, amend, revoke, or add property to a revocable trust, or to direct the

---

[10] Additionally, Wallace and E&E argue that capacity was not the issue. Instead, they argue the issue was that the district court appointed Successor Trustee; therefore, Martin would not have the authority to unilaterally dismiss the court's order of appointment. However, that argument is not properly before this Court because the circuit court did not address that issue and rule on it. *Kennedy*, 544 S.W.2d at 222. *See also Dell v. Citizens Ins. Co. of America*, 880 N.W.2d 280, 290 n.40 (Mich. App. 2015) ("Generally, an issue must be raised, addressed, and decided in the trial court to be preserved for review.").

[11] Kentucky equivalent: KRS 386B.6-020(1).

[12] Kentucky equivalent: KRS 386B.6-020(3)(a).

-19-

actions of the trustee of a revocable trust, is the same as that required to make a will." MCL 700.7601.[13] *See also In re Est. of Reisman*, 702 N.W.2d 658, 662 (Mich. App. 2005) (citation omitted) ("The rules of construction applicable to wills also apply to the interpretation of trust documents.").

For a will, "[a] person . . . must have testamentary capacity, *i.e.*, 'be able to comprehend the nature and extent of his property, to recall the natural objects of his bounty, and to determine and understand the disposition of property which he desires to make.'" *Persinger v. Holst*, 639 N.W.2d 594, 597 (Mich. App. 2001) (quoting *Est. of Vollbrecht v. Pace*, 182 N.W.2d 609, 612 (Mich. App. 1970)). *See also* RESTATEMENT (THIRD) OF PROPERTY (Wills & Don. Trans.) § 8.1 (2003).[14] Therefore, the issue is whether a prior adjudication of incapacity by the Michigan court meant Martin lacked the testamentary capacity necessary to amend his Trust.

The RESTATEMENT (THIRD) OF PROPERTY (Wills & Don. Transfers) § 8.1 (2003) Comment (h) provides that

> An adjudication of mental incapacity to manage property does not conclusively establish that the protected person subsequently lacked capacity to make, revoke, or amend a will or a revocable will substitute. Such an adjudication

---

[13] Kentucky equivalent: KRS 386B.6-010.

[14] The Michigan Court of Appeals has relied on RESTATEMENT (THIRD) PROPERTY, Wills and Other Donative Transfers in its analysis of trust issues. *See In re Griffin Trust*, 760 N.W.2d 318, 323 (Mich. App. 2008), *rev'd on other grounds by In re Mary E. Griffin Revocable Grantor Trust*, 765 N.W.2d 613 (Mich. 2009).

does, however, raise a rebuttable presumption that the protected person lacked the requisite capacity, shifting the burden of proof to the proponent to show that the protected person possessed the requisite capacity when taking the action in question.

This suggests, as Martin argues, that an adjudication of mental incapacity alone was not dispositive. Instead, the adjudication raised a rebuttable presumption that Martin lacked the requisite capacity, which shifted the burden to Martin to show that he had the requisite capacity. However, the district court did not provide Martin that opportunity. Instead, it determined unilaterally that the adjudication was sufficient and prohibited Martin and Elise from testifying at the August 2021 Hearing, presumably to provide evidence that Martin had the requisite capacity to amend the Trust.[15] Such refusal was an abuse of discretion as it is not supported by sound legal principles. *See Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). Moreover, the circuit court's affirmation of that analysis was in error.

Michigan caselaw further supports this finding. In *In re Cummins' Estate*, 259 N.W. 894, 895 (Mich. 1935), the highest court in Michigan found

---

[15] It is concerning to this Court that despite the fact that all parties had agreed a hearing was necessary, time was allotted on the circuit court's calendar, and witnesses were present from out of state, no evidence was permitted, resulting in a sale of Martin's assets worth between $18 million and $34 million.

guardianship alone was not sufficient to show lack of testamentary capacity to make a will.[16]  The Michigan Court found there was

> some testimony tending to show senility of testatrix, but whether advanced to the point of rendering her mentally incompetent to comprehend the nature and extent of her property, to recall the natural objects of her bounty and to determine disposition of her property she desired to make, were questions of fact for the jury under the testimony that she was unable to recognize relatives and neighbors, wandered away from home and was found in a hospital, where she had given her maiden name, and, at times, could not carry on conversations.

*Id.*

Further, the Michigan Court noted that "Testatrix was uneducated and could not read, write, or figure, and there was testimony that she could not tell the denominations of paper currency." *Id.*  Despite the seemingly severe incapacity, the Michigan Court concluded that "[s]uch ignorance . . . had little, if any, bearing on her mental capacity to make a will." *Id.*  Even, as here, where a guardian had been appointed for the estate, "[s]uch guardianship did not prevent testatrix from making a will or constitute probative evidence of her mental incompetency." *Id.*

Likewise, in *In re Johnson's Estate*, 281 N.W. 597, 601 (Mich. 1938), the Michigan Supreme Court again explained

---

[16] *See also In re Sprenger's Estate*, 60 N.W. 2d 436, 440 (Mich. 1953) ("appointment of a guardian to protect the property of a person does not constitute probative evidence of mental incompetency").

The fact that petitioner was adjudicated mentally incompetent to have the care, control and custody of his property because of his age, does not necessarily imply that he is not mentally competent in other matters. He might be sufficiently competent to make a will. *Rice v. Rice*, 50 Mich. 448, 15 N.W. 545; *Rice v. Rice*, 53 Mich. 432, 19 N.W. 132; *In re Estate of Cummins*, Appeal of St. Pierre, 271 Mich. 215, 259 N.W. 894. And he cannot be held, because of such an adjudication, to be, in effect, incompetent and incapable of enjoying the fruit of his labors. He is entitled to have his property or income used in every reasonable way that will satisfy his needs and desires[.]

Similarly, in *In re Richard Liba Revocable Living Trust*, No. 338049, 2018 WL 3441520, *1 (Mich. App. 2018),[17] the Michigan Court of Appeals did not rely on a settlor's incapacity when it invalidated a trust amendment. Instead, the Court focused on the language of the trust, which specifically forbade the settlor from amending the trust while incapacitated. *Id.* at *3. There, like here, the individual who executed the trust made himself the settlor and trustee. *Id.* at *1. A few years later, the settlor had a stroke – *id.* – after which a trial court adjudicated the settlor as incapacitated. *Id.* at *3. Following the adjudication, the settlor made an amendment to the trust, which altered the distribution to heirs. *Id.* at *1. The change created issues between the heirs; therefore, the successor trustee and conservator filed a petition with the court to determine whether the amendment

---

[17] Although unpublished cases are not binding, Successor Trustee relies upon this case, in part, and we find a fuller discussion of its findings to be valuable.

was valid. *Id.* The heirs opposing the amendment argued it was invalid, in pertinent part, because the terms of the trust did not allow the amendment to be made at the time. *Id.*[18] There, the trust stated, "physical or mental incapacity is as determined by a Court having jurisdiction over such matters," and that "during the period that [the settlor] shall remain incapacitated, this Trust Agreement shall be irrevocable and not amendable." *Id.* at *3.

Successor Trustee attempts to compare the *Liba* trust with that found here; however, we find no such similarity. Martin's Trust had no such provisions and instead stated that "[d]uring Settlor's lifetime, the [Trust] may be revoked partially or completely or amended in any respect. This power may be exercised by Settlor *at any time* and without the consent of Trustee or anyone else[.]" In this Trust, Martin did not express a prohibition on amendments if he were to become incapacitated, although he acknowledged the possibility of incapacitation through other provisions and definitions. To the contrary, he made his right to amend, as Settlor, open to exercise at any time, regardless of capacity, and without anyone's

---

[18] Those opposing also argued the settlor lacked testamentary capacity when he made the amendment, and the change was made under the undue influence of an heir; however, the Michigan Court of Appeals found those arguments to be moot. *Id.* In a footnote, the Court did note that the trial court did not err when it found the settlor lacked capacity, according to the evidence presented at trial. *Id*. at *4 n.2. Finding otherwise, the Michigan Court of Appeals noted, would have required the court "to reevaluate the credibility of witnesses and the weight to be given the evidence admitted at trial, which we will not do." *Id.* Here, importantly, there was no testimony presented in the district court, and the only evidence presented was of the out of state adjudication of incapacity.

consent. Further, in *Liba*, the Michigan Court did not hold that incapacity alone necessitated the invalidation of the amendment. Instead, it emphasized that the language of the trust forbade amendments if the settlor was incapacitated. We find no such language here. The Trust's capacity language – deeming a fiduciary incapacitated if a court having jurisdiction makes such a determination – is applicable to a trustee, but there is no language extending that language to the Settlor.

Michigan statutes and caselaw make it clear that adjudicated incapacity alone is not sufficient to prove a settlor lacked testamentary capacity at the time the amendment was made. The standard for testamentary capacity requires an analysis of whether the settlor could "comprehend the nature and extent of his property, to recall the natural objects of his bounty, and to determine and understand the disposition of property which he desires to make." *See Persinger*, 639 N.W.2d at 597 (internal quotation marks and citation omitted).

While proof of the adjudication is evidence of incapacity, as the RESTATEMENT (THIRD) OF PROPERTY (Wills & Don. Trans.) § 8.1 clarifies, it simply creates a rebuttable presumption that the person lacked capacity. That person then has the burden to present evidence to show he or she did have the requisite capacity to make the amendment. The lower court's refusal to properly enlist the legal standards relevant here and allow Martin to rebut the presumption

via prepared witness testimony[19] – instead relying solely on the adjudication – was an abuse of discretion.

## V.  CONCLUSION

Based on the foregoing analysis, we REVERSE the Order entered by the Fayette Circuit Court on March 30, 2022 in its entirety and REMAND this case to the Fayette District Court to conduct an evidentiary hearing as concerns Martin's testamentary capacity to make the First Amendment to the Martin L. Smith Revocable Trust dated July 6, 2021.  As discussed, the previously adjudicated incapacity alone was not sufficient to invalidate the attempted Amendment.  The District Court shall then make findings of fact and conclusions of law as required by CR 52.  If Martin is found to have had sufficient capacity to execute the Trust Amendment, that Amendment shall be given full force and affect as of July 6, 2021.

JONES, JUDGE, CONCURS.

TAYLOR, JUDGE, CONCURS IN PART, DISSENTS IN PART, AND FILES SEPARATE OPINION.

TAYLOR, JUDGE, CONCURRING IN PART AND DISSENTING IN PART:

While I concur with the reasoning and analysis by the majority regarding Martin's

---

[19] *Rice v. Rice*, 15 N.W. 545, 547 (Mich. 1883) ("A number of witnesses who had known the decedent in his life-time, and had seen more or less of him at about the time the will was executed, but who were not medical experts, were allowed to testify that in their opinions he was [or was not] then insane.").

capacity to amend his Trust and his status as a party below, I must respectfully dissent regarding the disposition of the case and write separately to express my belief that this case should not be litigated before a Kentucky court and my serious concerns and reservations with the proceedings conducted below.

To begin, I emphasize that this is a case involving a revocable *inter vivos* trust (often referred to as a family or living trust). The Settlor, original trustee and beneficiary are the same person, Martin Smith. The Trust exclusively grants Martin the power to revoke the Trust at any time (although the Fayette District Court would probably not permit it). The Trust was created in Michigan in 2017 under Michigan law, written by a Michigan attorney, administered for all intents and purposes in Michigan until January of 2021, and consists of only 2 assets, both of which are primarily located in Michigan. There are no assets of this Trust located in Kentucky. One of the assets, Martin's 48.5 percent stock ownership in the family manufacturing business (E&E Manufacturing Company, Inc.) located in Michigan with a second plant in Tennessee, generates approximately $200 million in revenues annually. Martin values his stock interest in the company at more than $38 million, while his brother Wallace, also a Michigan resident and CEO of E&E, has intervened in the Fayette District Court to attempt to purchase Martin's stock for $16 million plus interest paid over a five-year payout. Therein lies the real problem in this case – Wallace and Martin were

-27-

litigating corporation damage claims in Michigan that are effectively now being resolved in Kentucky by a District Court, whose jurisdictional limitation for damage claims is only $5,000, and being a court that I believe does not have subject matter jurisdiction to hear this case.

The genesis of Fayette District Court's involvement with the Trust, beginning in January of 2021, is most problematic. As noted by the majority, in 2019, Martin filed a lawsuit in the United States District Court for the Eastern District of Michigan (federal court), seeking damages against his brother Wallace and his wife for shareholder oppression, breach of fiduciary duties, fraud and sundry other claims.[20] That litigation had extensive discovery taken and survived at least one motion for summary judgment, until Wallace moved to dismiss the case on July 21, 2020, for lack of diversity (subject matter) jurisdiction. Martin filed the federal lawsuit in Michigan alleging diversity of citizenship as a Kentucky resident, purportedly due to his ownership of a house in Lexington where he alleged to have resided. Wallace presented substantial evidence in the federal action that Martin was a citizen of Michigan, especially during the four-to-five-year period prior to filing the lawsuit in 2019. As noted, Martin had a stroke in

---

[20] As noted, E&E Manufacturing was a family business that Wallace and Martin inherited, with Wallace and his family owning 51.5 percent of the stock. In 1997, the brothers had a falling out and Wallace effectively fired Martin from the business. Martin alleges he never received a dividend from E&E and for the six-year period prior to filing this lawsuit, Wallace received approximately $15 million, in salary, bonuses, and deferred compensation while Martin received zero.

2020 and on July 8, 2020, a Michigan probate court found Martin to be incapacitated to the extent his wife, Elise, was appointed his guardian. His address on the court order was listed in Howell, Michigan. Notwithstanding, the proceedings in the Michigan federal court continued and the court scheduled an evidentiary hearing on Wallace's motion to dismiss for January 12, 2021.

Apparently, in an attempt to bolster Martin's argument of Kentucky citizenship to establish diversity jurisdiction in the federal court, the Michigan law firm, without any authority from Martin or Elise that is of record and without any authority whatsoever under the Trust Agreement, retained a law firm in Lexington to file a "Motion" in Fayette District Court to appoint a Successor Trustee. The "Motion" initiated this action. KRS 386B.7-060 provides that only a settlor, co-trustee, or beneficiary may request a district court to remove a trustee. However, there is no statutory authority allowing an out-of-state law firm to seek the appointment of a trustee in Kentucky by the District Court. The motion was filed in Fayette District Court on January 7, 2021, five days before the federal court hearing on Wallace's motion to dismiss. I find this conduct incredulous to say the least. Even more incredulous is that there was no summons issued by the District Court, absolutely no compliance with CR 4.01, and perhaps most astounding, neither Martin or Elise were served a copy of the "Motion" or placed on notice that this proceeding had been filed. Apparently, from the record, it appears the

Michigan law firm had already chosen the Successor Trustee, as John Norman had been consulted before filing and was listed on the service of process in the "Motion" filed on January 7, 2021. Thereafter, on January 12, 2021, without notice or a hearing on the motion, in clear violation of Martin's most fundamental due process rights, the District Court, "having reviewed the Motion at the convenience of the Court," signed the order appointing Norman as Successor Trustee. The District Court further allowed Norman's appointment, without surety or bond pursuant to the "terms of the Trust." The court did not cite where those terms can be found in the Trust Agreement. Based on my review, I, likewise, cannot locate such terms. To the extent that the Kentucky Uniform Trust Code in KRS 386B is applicable to this case, none of provisions set forth in KRS 386B.7-020 were followed by the District Court. There were other violations of the Uniform Trust Code in this case that I will address later.

Clearly, the filing of this case in Fayette District Court was a litigation strategy by the Michigan law firm in the federal litigation and not based on any emergency or necessity to protect the two assets held by the Trust. Nor do I see any evidence that this motion was commenced with the approval of Martin or Elise. The Michigan law firm argued the relevance of the Successor Trustee's appointment at the hearing held in federal court on the same day of the Successor Trustee's appointment and was included in their supplemental brief filed on

February 11, 2021, in the federal court action.[21]  However, the federal court would not bite on this argument.  In its Opinion and Order entered on March 5, 2021, the federal court dismissed the lawsuit, concluding Martin was a citizen of Michigan and there was no diversity of citizenship sufficient to sustain the action in federal court under federal laws and rules.  *Smith v. Smith*, 526 F. Supp. 3d 263 (2021).  As part of the federal court's thorough analysis, the court therein stated:

> Third, a state court in Kentucky recently appointed John Norman, a Kentucky-based attorney, as the successor trustee over Martin's trust on January 12, 2021.  [Exhibit reference omitted.]  Again, however, this final fact is neither relevant nor reliable, as it took place after Martin initiated the action and after Defendants challenged his domicile.

*Id.* at 274.

This background raises two issues that the parties have ignored which this Court should not.[22]  First, how does a Michigan law firm have standing to file a "Motion" in a Kentucky court to appoint a successor trustee for a Michigan trust

---

[21] This Court may take judicial notice of all pleadings, orders, and judgments in Case No. 2:19-cv-10330-MAG, filed in the United States District Court for the Eastern District of Michigan, Southern Division.  *Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260, 264-65 (Ky. App. 2005).  *See also* Kentucky Rules of Evidence 201.  The supplemental pleading can be found at Dkt. No. 160, in Case No. 2:19-cv-10330-MAG.

[22] As the Kentucky Supreme Court recently held in *Community Financial Services Bank v. Stamper*, 586 S.W.3d 737, 740 (Ky. 2019), "judges and justices are presumed to know the law and are charged with its proper application."  Similarly, as noted by the Court in *Mitchell v. Hadl*, 816 S.W.2d 183, 185 (Ky. 1991), "when the facts reveal a fundamental basis for decision not presented by the parties, it is our duty to address the issue to avoid a misleading application of the law."

without any legal authority and where the Trust Agreement gives that firm absolutely no authority whatsoever to file the motion? Equally perplexing, the "Motion" was filed without the knowledge or approval by Martin or his wife Elise as his guardian. Second, even more disturbing is how the Fayette District Court could exercise jurisdiction in this case over a Michigan trust, especially given the federal court's ruling and judgment in March of 2021 that Martin was a citizen of Michigan, not Kentucky. In this instance the Fayette District Court failed to raise or address either issue before or after appointing Norman as the Successor Trustee.

As concerns the standing of the Michigan law firm, I recognize that the issue can be waived if not properly raised as a defense before the trial court. *Harrison v. Leach*, 323 S.W.3d 702, 705 (Ky. 2010). However, in this case, there were no parties properly summonsed or served with papers to participate in this action when it was initiated – so who could have raised the issue? In this regard, I believe the Fayette District Court failed miserably in allowing the case to proceed without Martin or Elise Smith having been notified and given an opportunity to be heard before appointment of the Successor Trustee. Incredibly, the court appointed the Successor Trustee without a hearing. As I previously stated, it is clear that the attempt to appoint a Successor Trustee by the Michigan law firm in Kentucky was a trial tactic to convince the federal court in Michigan that Martin was a Kentucky resident. The law firm's involvement in Kentucky also appears to be self-serving

-32-

since the firm withdrew from representation of the Trust and Martin in the federal action after the Fayette District Court approved the sale of the Trust assets to Wallace on September 7, 2021. The law firm then subsequently filed a claim in the District Court for over $1.5 million in attorney fees and out-of-pocket expenses. Documents in the record also reflect that the Michigan law firm was retained for a period of time by the Successor Trustee to assist in attempting to sell the assets to Wallace, which on its face appears to me to be a blatant conflict of interest in the firm's representation of Martin.[23] None of these matters were addressed by the Fayette District Court, primarily because the court failed to conduct a single evidentiary hearing, yet still approved a sale of the Trust's assets for over $16 million in September of 2021.

The standing issue may be irrelevant, since, in my opinion, the Fayette District Court did not have subject matter jurisdiction to hear this action. Unlike standing, a defect in subject matter jurisdiction may be raised by the parties, or a court, *sua sponte*, at any time during the proceedings, including on appeal, and

---

[23] The District Court record created by the parties after the filing of the appeal contains emails between the Michigan law firm and the Successor Trustee regarding the sale of the Trust's assets to Wallace, and various strategies related thereto. *See* Exhibit 21 to the Michigan law firm's filing of a motion to intervene in District Court to collect its legal fees and expenses against the Trust, on March 23, 2022. The emails also reflect that both knew the dispute needed to be resolved in a Michigan state court as they discussed the filing of a protective action in state court to protect the Trust's rights, during the pendency of the sale negotiations and the pending motion to reconsider the federal court's judgment of March 15, 2021. I must assume no action was filed in a Michigan state court.

cannot be waived. *Commonwealth Health Corp. v. Croslin*, 920 S.W.2d 46, 47 (Ky. 1996). *See also Leach*, 323 S.W.3d at 705; *Duncan v. O'Nan*, 451 S.W.2d 626, 631 (Ky. 1970).

Presumably, the sole basis relied upon by the Michigan law firm to access the jurisdiction of the Fayette District Court was Martin's purported residence in Kentucky. But as both the Successor Trustee and Wallace argue on appeal, Martin was not a party below and lacks standing in this case. Effectively, both are saying to this Court that they can use Martin's purported residence in Lexington to divest his Trust of its assets, but he has no right to challenge their actions. And most certainly, the Michigan law firm is not a citizen or resident of Kentucky with standing to access the District Court regarding the Trust.

In the "Motion" filed by the Michigan law firm to initiate this action, Paragraph 10, reads as follows

> 10. That because Smith is unable to serve at Trustee, Comerica Bank has declined to serve as successor Trustee and Settlor's spouse has not appointed a successor professional trustee within 30 days of the vacancy and Smith is a resident of Lexington, Kentucky, the Fayette District Court now has the authority to appoint a successor professional trustee.

This is a blatantly false allegation as concerns the residency of Martin Smith and the court's "authority" to appoint a Successor Trustee. To the contrary, the District Court had no authority to appoint a successor trustee. The District Court's

authority arguably could only have arisen if Martin was a citizen who was domiciled in Kentucky and that very issue was in dispute in the Michigan federal court when the Fayette District Court action was filed. And, Section 3.6 of the Trust Agreement, referenced in the "Motion" clearly states that only a "court having jurisdiction" could appoint a Successor Trustee. The District Court took no steps nor made any inquiry into whether the court had jurisdiction under the Trust Agreement. On its face, it appears the District Court never even read the Trust Agreement before appointing the Successor Trustee. Likewise, the Michigan law firm, its Kentucky counsel, and Successor Trustee knew this very issue was in dispute in the federal action in Michigan yet made no reference to the litigation in the "Motion," or otherwise brought it to the District Court's attention.

Then on March 15, 2021, the Michigan federal court rendered a judgment finding that Martin was a citizen of Michigan, not Kentucky and his claims against Wallace must be asserted in a Michigan state court. This finding of citizenship and domicile was completely ignored by the Fayette District Court, and the Successor Trustee, although the record reflects that the federal court judgment was referenced in various pleadings filed with the District Court.

In Kentucky, the longstanding rule is that a federal court judgment is entitled to full faith and credit in our state courts. *Waddell v. Stevenson*, 683 S.W.2d 955, 958 (Ky. App. 1984). When the judgment was entered on March 15,

2021, establishing Martin as a citizen of Michigan, all proceedings in the Fayette District court should have been dismissed or at minimum, held in abeyance pending an evidentiary hearing regarding the same. If Martin is not a citizen of Kentucky, there could be absolutely no legal basis whatsoever to initiate an action in Kentucky regarding the administration of a Michigan trust, whose assets are also located in Michigan. A court must have subject matter jurisdiction before it decides a case. *Nordike v. Nordike*, 231 S.W.3d 733, 737 (Ky. 2007). The only basis relied upon by the Michigan law firm to get in the door of a Kentucky court was closed by the federal court judgment, in my opinion. Yet the parties and the District Court completely ignored the judgment as the Successor Trustee continued to pursue the sale of the Trust's two assets to Wallace, without communicating with or obtaining input from Martin. And, now on appeal, they blatantly assert that Martin was not a party below, and thus has no rights. Frankly, I find these arguments to be unconscionable.

Even if for the sake of argument, jurisdiction and standing were not issues before the court, the District Court nonetheless failed to follow the mandates of the Uniform Trust Code under KRS Chapter 386B in the administration of the Trust. As noted, this was a Michigan Trust, whose principal place of administration was Michigan and was governed by Michigan law. There is no dispute that the situs of the Trust is Michigan. In this case, the Successor Trustee

effectively transferred the trust's principal place of administration to Kentucky in violation of KRS 386B.1-060(4) by not giving the required sixty-day notice to Martin with the required statutory information about the transfer. Had Martin been properly notified and had he objected to the transfer, the administration of the Trust in Kentucky would have been prohibited. It appears obvious that the Successor Trustee's haste to sell the Trust's assets and collect a large fee contributed to his failure to follow the law.

Assuming the Successor Trustee was properly appointed, which I do not believe he was, I am equally troubled by his failure to adhere to KRS 386B.8-010 and 386B.8-020 in regard to the Successor Trustee's fiduciary duties owed to Martin as sole beneficiary. Upon his appointment, the Successor Trustee never met in person or had any discussions with Martin or Elise regarding the sale of the Trust's two assets. Which begs the question of why the Successor Trustee felt the need to immediately sell the Trust assets. The family feud between Wallace and Martin had been ongoing for years; the federal litigation was ongoing for over two years; and neither Martin nor Elise had expressed the necessity to the Successor Trustee to immediately sell the Trust assets to Wallace. Instead, the Successor Trustee immediately obtained an order from the District Court regarding his fee schedule after his appointment. The fee schedule was geared toward the sale of the Trust's assets, although the Successor Trustee never consulted with Martin or Elise

in person.  By my calculation, the Successor Trustee stands to recover at least

$125,000 in fees upon completion of the sale of the two assets.  In his haste to sell

the trust assets at the urging of Wallace and his attorneys, the Successor Trustee

also walked away from the voluminous claims the Trust and Martin had asserted

against Wallace and others in the federal court action, without any explanation to

Martin as sole beneficiary.

On July 6, 2021, when Martin filed his Amendment to the Trust

removing the Successor Trustee from office, the Successor Trustee made no

attempt to meet in person with Martin and his attorney to discuss any issues

regarding the administration of the Trust, including the sale of its assets.[24]  Rather,

two days later, the Successor Trustee immediately filed another motion in the

District Court to set aside the amendment and approve the sale of the Trust's two

assets, again without any input from Martin as the sole beneficiary.  This conduct

appears to be more self-serving to the Successor Trustee than serving the best

interest of the beneficiary.  In this regard, Martin's arguments on appeal that the

Successor Trustee breached his fiduciary duties to Martin are well taken, in my

opinion.  And, I find it most ironic that the Successor Trustee relied on the

Michigan Probate Court's judgment of Martin's incapacity in his arguments before

---

[24] In Kentucky, a trustee owes a duty of utmost fidelity to the beneficiaries of the trust, which include keeping them updated on its administration. *Wiggins v. PNC Bank, Kentucky, Inc.*, 988 S.W.2d 498, 501 (Ky. App. 1998); KRS 386B.8-130.

the District Court to maintain his appointment and preclude Martin's participation in the sale of trust assets, but conveniently ignored the federal court judgment holding that Martin was a citizen of Michigan, not Kentucky, thus precluding any basis for subject matter jurisdiction by the District Court.

Based on the District Court's lack of jurisdiction and the Successor Trustee's failure to adhere to the Kentucky Uniform Trust Code, I believe all the orders entered by the District Court should be void and of no force and effect. Similarly, any actions taken by the Successor Trustee regarding the sale of trust assets and settlement of claims against the Trust and the Trust's claims against Wallace should also be deemed void.

Finally, I would remiss if I did not address the conduct of some of the attorneys and the District Court following the filing of the original notice of appeal on October 5, 2021, of the District Court's September 7, 2021, order. As a general rule in Kentucky, subject to some narrow exceptions in domestic relations cases, it is black letter law that the filing of a notice of appeal divests a trial court of jurisdiction to rule on any issues while the appeal is pending. *Young v. Richardson*, 267 S.W.3d 690, 695 (Ky. App. 2008) (citing *Johnson v. Commonwealth*, 17 S.W.3d 109, 113 (Ky. 2000)). Any actions taken by a court after the filing of a notice of appeal are void. *See Wright v. Ecolab, Inc.*, 461 S.W.3d 753, 759 (Ky. 2015).

However, in this case, as acknowledged at oral argument, the parties continued filing claims, seeking intervention and requesting approval for the "settlement" of various claims against the Trust assets in the District Court. Those claims, primarily from attorneys, totaled almost four million dollars. I liken these actions to sharks circling blood in the water. The District Court then proceeded to conduct a hearing on various motions on May 24, 2022, even though Martin's appeal was not final and a Motion for Discretionary Review was pending before this Court at that time. The District Court then, acting totally outside its jurisdiction, signed an order on June 9, 2022, approving millions of dollars of claims against the Trust assets. That order was conditional upon the final ruling of this Court. I am totally stunned at the cavalier arrogance of those involved and their complete disregard of applicable Kentucky laws and rules. Accordingly, the District Court orders entered after the original filing of the notice of appeal below, and any agreements related thereto, are also null and void on their face as a matter of law, in my opinion. *Young*, 267 S.W.3d at 695.

In summation, this is the kind of case that gives both the Court of Justice and the legal profession in Kentucky a black eye. Presumably, Martin created the revocable family (spendthrift) Trust in 2017 to protect his most valuable asset, his stock in E&E Manufacturing, worth millions of dollars, from his creditors. Unfortunately, the Trust did not protect Martin, nor did our courts, from

legal predators.  In my opinion, we should reverse the Circuit Court's order affirming and direct the District Court to dismiss the case, restoring the Trust's assets in their entirety, including all claims against Wallace and other family members, so that the case can then be tried in a Michigan state court, where it belongs.  Additionally, the District Court should direct that the Trust's assets be delivered to Martin or his designee as Trustee without payment of any claim for compensation from the Successor Trustee, or his attorneys.

BRIEFS FOR APPELLANT:

Bruce B. Paul
William G. Carroll
Louisville, Kentucky

BRIEF FOR APPELLEE JOHN
NORMAN, SUCCESSOR TRUSTEE:

Joseph Whitney Wallingford
Lexington, Kentucky

BRIEF FOR APPELLEES
WALLACE SMITH AND E&E
MANUFACTURING CO., INC.:

Daniel E. Hitchcock
Lexington, Kentucky